[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 23, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10347
Non-Argument Calendar
_____

Agency No. A98-228-259

AUNG KO LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(February 23, 2009)**

Before EDMONDSON, Chief Judge, and MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Aung Ko Lin, a native and citizen of Burma, petitions for review of the affirmance by the Board of Immigration Appeals ("BIA") of the decision of the Immigration Judge ("IJ"). The decision denied asylum and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[1] No reversible error has been shown; we deny the petition.

We review the BIA's decision in this case because the BIA did not expressly adopt the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review the BIA's legal determinations de novo. Id. Factual determinations are reviewed under the "highly deferential" substantial evidence test; and we must "affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal citation omitted). Therefore, a fact determination will be

---

[1]The decision also denied withholding of removal. But on appeal, Lin does not offer argument on this claim; and thus, it is abandoned. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that petitioner abandons an issue by failing to offer argument on that issue).

reversed only when the record compels, instead of merely supports, a reversal. Alim v. Gonzales, 446 F.3d 1239, 1254 (11th Cir. 2006).

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion. 8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Forgue, 401 F.3d at 1286-87.

Lin sought asylum based on political opinion: his support of the National League for Democracy ("NLD") and its exiled leader, Daw Aung San Suu Kyi. In 1995, when Lin still was in high school, he participated in an anti-government rally where protesters demanded the immediate release of Kyi. Police arrested Lin and others and brought them to a military camp. Lin and his cellmates were given only water the first day, and he was punched and kicked in the stomach when he asked for food. The next day, Lin was interrogated about the extent of his political activities; he was yelled at and beaten during interrogations. Upon his release five days later, he and his parents were made to sign a form promising that he would not become involved in politics.

Lin's arrest caused him not to be able to enter college immediately after his high school graduation in 1996. In 2000, he began college and joined an outlawed

3

student organization, the All Burma Federation of Students Union ("ABFSU"). After Lin joined the ABFSU, the police, on two or three occasions, detained and interrogated him about whether he was involved in politics. Each of these interrogations lasted less than a half hour, and he suffered no harm during them. The interrogations worried his parents, and they arranged for Lin to get a passport so he could leave Burma.

Before he had the necessary paperwork to leave Burma, near the end of 2001, Lin (with several other students) attended another Kyi demonstration that was raided by the police. Lin avoided arrest; but one of his friends, who had a list of ABFSU members, was arrested. After this incident, Lin -- who feared that he would be arrested because his name was on the list and the police searched his parents' house after the demonstration -- hid at a friend's house for two months until he was able to leave Burma. Lin testified that his parents' business in Burma was double-taxed because of his political activities and that his parents told him, when he talked to them in late 2005, that authorities still were looking for him in Burma.

The BIA agreed with the IJ that Lin did not establish past persecution or a well-founded fear of future persecution. About the well-founded fear part, the BIA noted that (1) Lin did not show that other members on the ABFSU membership list were persecuted; (2) his family remains in Burma physically unharmed; (3) more

4

than 10 years had passed since his arrest; and (4) he suffered no physical harm when he was briefly questioned and detained in 2000.

On appeal, Lin argues that he established a well-founded fear of future persecution based on his prior arrest and detentions and ongoing threats made against him and his family by the Burmese government.[2]  We disagree.  To show a well-founded fear of future persecution, Lin had to establish that his fear both was "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. "[T]he objective prong can be fulfilled . . . by establishing . . . that he . . . has a good reason to fear future persecution."  Id. (internal quotation omitted).

We conclude that Lin has not established, with specific evidence, such an objective fear based on the following things: (1) over 10 years have passed since Lin's single arrest and over 5 years since police briefly interrogated him about his political activities; (2) he was not physically harmed in his last contact with Burmese police in 2000; and (3) he presented no evidence that persons whose names were on the ABFSU membership list later were arrested, threatened, or

---

[2]Lin abandons the BIA's past persecution determination by failing to offer argument on it.  See Sepulveda, 401 F.3d at 1228 n.2.  Also, we decline to address Lin's challenges to determinations made by the IJ that were not relied on by the BIA.  See Lopez v. U.S. Attorney Gen., 504 F.3d 1341, 1344 (11th Cir. 2007) (explaining that because the IJ determination that petitioner challenged had not been adopted by the BIA, it did not form part of the order under review).

persecuted after the 2001 demonstration.[3] Also, with the exception of their business being double-taxed, Lin's parents remain in Burma unharmed. See Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1259 (11th Cir. 2006) (indicating that a claim of well-founded fear is undercut when the alien has family living in the country without incident). Finally, that officials were looking for Lin in 2005 does not compel the conclusion that he will be persecuted if removed to Burma.

We now turn to Lin's CAT relief argument. The BIA concluded that Lin never had been tortured in Burma and had not otherwise shown that he likely would be tortured upon return there. Lin argues that he will be arrested if returned to Burma and, based on the country conditions there, he will be tortured because the country regularly tortures political prisoners.

An alien is entitled to CAT protection if he shows that he is "more likely than not to be tortured in the country of removal." Jean-Pierre v. U.S. Attorney Gen., 500 F.3d 1315, 1323 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(4)). The agency must consider all relevant evidence when making its assessment of whether it is more likely than not that the applicant will be tortured if returned to his home

---

[3]Lin's appellate assertions that he was "arrested repeatedly" in 2000 and that authorities have continued threatening to arrest him are belied by the record: Lin testified that he was arrested once in 1995 and only detained two or three times in 2000. And his testimony indicated that authorities were looking for him in 2001 and 2005, not that they had threatened to arrest him.

country, including evidence of past persecution and information about conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3)(i), (iv).

Here, the BIA considered the relevant evidence in denying CAT relief; and substantial evidence supports this decision. While the State Department's Country Reports on Burma indicate that security forces torture, beat, and abuse political prisoners and employ harsh interrogation techniques, Lin failed to establish that it is more likely than not that he personally would be tortured if removed to Burma. Though he asserts that he will be arrested upon his return, the evidence does not contain threats of arrest or indicate why authorities were looking for him in 2001 and 2005; and Lin was not arrested when he was briefly detained in 2000. In addition, he was not previously tortured in Burma or subjected to harsh interrogation techniques in his previous interrogations.

PETITION DENIED.